IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA GAYLE MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.   CIV 11-175-M |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on January 26, 2006 alleging a disability since October 1, 2005 (TR. 111-113). The application was denied on initial consideration and on reconsideration at the administrative level (TR. 54, 55). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on October 28, 2008 (TR. 24-52).The Plaintiff appeared in person and with her attorney and offered her testimony in support of the application (TR. 27-47). A vocational expert (VE) testified at the request of the ALJ (TR. 47-51). The ALJ issued her decision

on September 16, 2009 finding that Plaintiff was not entitled to DIB (TR. 11-23). The Appeals Council denied the Plaintiff's request for review on January 13, 2011, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 1-3).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability application, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 1, 2005 so the process continued (TR. 14). At step two, the ALJ concluded that Plaintiff had the severe impairments of "major depressive disorder/bipolar disorder/dysthymia; an anxiety disorder, not otherwise specified; a mixed personality disorder; a post-traumatic stress disorder; tobacco abuse

2

and a history of prescription medication dependence; and bladder prolapse and uterine prolapse" (TR. 14). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (PRW) (TR. 17).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC for "a range of light work" (TR. 19). The ALJ specifically found that Plaintiff could perform simple and routine work with infrequent changes in routine; and that she could not work with the public (TR. 19). The ALJ used Medical Vocational Rule 202.21 as a framework for decision making and considered the testimony of the VE in determining that the jobs of "assembler", "addresser" and "surveillance system monitor" were jobs existing in significant numbers in the national economy which could be performed by Plaintiff (TR. 22-23). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB (TR. 23).

## ISSUES PRESENTED

On appeal to this Court, Plaintiff alleges that the ALJ erred by failing to properly consider her Global Assessment of Functioning (GAF) scores; that the ALJ failed to engage in the proper drug and alcohol addiction (DAA) analysis; that the ALJ erred in her credibility analysis by ignoring Plaintiff's favorable work history; and that the ALJ failed to properly analyze the opinion of Plaintiff's treating physician.

**ANALYSIS**

I.  **The ALJ's Consideration of Plaintiff's GAF Scores.**

Plaintiff argues that the ALJ's RFC finding is flawed because of the ALJ's failure to properly analyze her GAF[1] scores of 50 or less (See Plaintiff's Brief at pages 19-20). A low GAF score is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. *Langley v. Barnhart,* 373 F.3d 1116, 1122 (10th Cir. 2004). The Tenth Circuit, through a series of unpublished decisions, has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See, Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004); *Lopez v. Barnhart,* 78 Fed. Appx. 675 (10th Cir. 2003). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. However, a GAF of 50 or less does suggest an inability to keep a job and should not be ignored. *See also*, *Oslin v. Barnhart,* 69 Fed. Appx. 942 (10th Cir. 2003). That score, "without evidence that it impaired [plaintiff's] ability to work, does not establish an impairment." *Camp v. Barnhart,* 103 Fed. Appx. 352, 354 (10th Cir. 2004). A low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." *Petree v. Astrue*, 260 Fed. Appx. 33, 42 (10th Cir. 2007), *citing Howard v. Comm're of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

---

[1] A GAF represents Axis V of the Multiaxial Assessment system.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 2000), p. 34. The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. The GAF Scale defines the following ranges; **(31-40)** Some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood; **(41-50)** Serious symptoms OR serious impairment in one of the following: social, occupational, or school functioning; and **(51-60)** Moderate symptoms OR any moderate difficulty in social, occupational, or school functioning.

In her decision, the ALJ mentions the July 2005 finding of Plaintiff's treating psychiatrist, Harvey C. Martin, M.D., that Plaintiff, following her discharge from an inpatient facility, had a current GAF of 48 with a GAF of 55 within the past year (TR. 15, 202). The ALJ also states that Plaintiff was admitted to the chemical dependency inpatient unit due to abuse of Darvocet and Lortab in addition to depression; and that she was discharged after detoxification (TR. 15). The ALJ also makes reference in her opinion to an August 2007 GAF score of 45 from a psychiatrist at the Mental Health and Substance Abuse Center of Southern Oklahoma (TR. 16, 458). The ALJ further noted that Plaintiff's diagnoses included polysubstance dependence; and that Plaintiff reported she was applying for disability and had been denied twice since 1995 (TR. 16, 458). The ALJ also includes in her opinion the July 2007 GAF score of 45, highest of 55 within the last year; and the May 2008 GAF score of 50 (TR. 16). For each of these GAF scores, the ALJ noted that drug dependence was a part of her diagnosis (TR. 16). The ALJ also stated that Plaintiff's physicians reported her prognosis was good if she continued to implement positive coping strategies to deal with her problems (TR. 16, 479).

The ALJ's decision makes reference to the GAF scores and provides an adequate discussion of Plaintiff's psychological evaluations which employ similar factors to those used to arrive at a GAF score (TR. 15-17). The GAF rates the social, occupational, and psychological functioning, which the ALJ properly took into account. Thus, particularly in this case, the scores, standing alone, without further explanation, do not establish an impairment severely interfering with an ability to perform basic work activities. See, *Eden v. Barnhart,* 109 Fed. Appx. 311 (10th Cir. 2004)(unpublished). In addition, the ALJ is not required to discuss every piece of evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

Given the findings on other evidence supporting the ALJ's RFC determination, as well as the inherent subjectivity of the GAF assessment, this Court does not find error in the ALJ's failure to specifically discuss and analyze each of Plaintiff's GAF scores.

## II.  The ALJ's Analysis of Plaintiff's Drug and Alcohol Addiction (DAA).

Plaintiff argues that the ALJ erred in his analysis of Plaintiff's DAA (See Plaintiff's Brief at pages 20-22). Specifically, Plaintiff states that the ALJ failed to analyze her remaining limitations if she discontinued her drug and alcohol abuse. In order to properly evaluate DAA, an ALJ must first determine whether the claimant is disabled.[2] In the present case the ALJ fully considered Plaintiff's impairments, including her polysubstance abuse, and properly determined that she was not disabled (TR. 15-19, 23). Thus, it is unnecessary to proceed to evaluate Plaintiff's disability independent of her polysubstance abuse or to determine whether her polysubstance abuse is a contributing factor material to the determination of disability.

Plaintiff also urges that the statement of the agency psychologist, Kelly Ray, Ph.D., requires that the ALJ find Plaintiff disabled at step three (See Plaintiff's Brief at pages 20-21). Dr. Ray stated that Plaintiff's "Not severe rating as DAA is material" (TR. 419). Plaintiff misconstrues the opinion of Dr. Ray which is clearly expressed in her contemporaneous finding that Plaintiff's impairments are not severe (TR. 421, 433). While Dr. Ray does state that DAA is material to severity, no opinion is offered as to disability, which is an issue reserved to the Commissioner. The ALJ adopted Dr. Ray's opinion and included it in her decision (TR. 20).

Thus, it appears that the ALJ conducted an appropriate analysis of Plaintiff's DAA.

---

[2]  20 C.F.R. § 404.1535. *How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.* (a) *General*. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability. (b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism*. (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling. (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability. (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

### III.  The ALJ's Analysis of Plaintiff's Credibility.

Plaintiff argues that the ALJ erred in her credibility analysis by ignoring Plaintiff's favorable work history (See Plaintiff's Brief at pages 22-23). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* At 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain. "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain." *Id.* Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164.  In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991).  *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

Plaintiff argues that the ALJ erred in not considering her work record in determining her credibility. The ALJ's decision reflects that she considered the entire record including Plaintiff's work history even though the ALJ failed to specifically discuss the work history in her credibility analysis (TR. 14, 21-22, 120, 149-156, 47-48).

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions. *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Id* at 1372.

In the present case the ALJ reached step three of the *Luna* analysis and in assessing the credibility of the Plaintiff followed the dictates of *Kepler* by providing an adequate discussion of the evidence which linked specific evidence to her findings (TR. 19-20).

In accordance with *Luna* and *Kepler,* the ALJ determined that the medical evidence did not support the degree of limitation claimed by Plaintiff. An ALJ's determination of credibility is given great deference by the reviewing court. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992). On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ. *Kepler* at 391; (Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Thus, it appears from the record that the ALJ's credibility determination was supported by substantial evidence and should not be disturbed on appeal.

**IV.     The ALJ's Analysis of the Opinions of Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ failed to properly analyze the opinions of her treating physician, Dr. Martin, as stated in his Mental RFC Questionnaire of February 2007 (TR. 408-412) (See Plaintiff's Brief at pages 23-24). Dr. Martin concluded in the Questionnaire that Plaintiff would be unable to meet competitive standards requiring her to: Maintain regular attendance and be punctual within customary, usual strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods (TR. 410). These opinions of Dr. Martin as to Plaintiff's limitations would, according to the VE, preclude all gainful activity (TR. 50-51).

When presented with opinions of a treating physician, the ALJ must "give good reasons" in her decision for the weight assigned to the opinion. 20 C.F.R. § 404.1527(d)(2) *see also* SSR 96-2p; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p; 20 C.F.R. §404.1527(d)(2).

The Tenth Circuit described the required analysis of a treating physician's opinion in *Watkins v. Barnhart*, 350 F. 3d 1297, 1300-1301, (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

The Court in *Watkins* further reasoned that

> Resolving the controlling weight issue does not end our review. In completing the analysis: adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927

*Watkins* at 1300; SSR 96-2p.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight then in order to disregard or give "slight weight" to that treating physician's opinion, she must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which

>an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In her decision the ALJ provided a detailed and thorough review of the medical evidence. She also provided specific legitimate reasons for giving "little weight" to the opinions of Plaintiff's treating physician, Dr. Martin (TR. 20-21). In evaluating the February 2007 opinions of Dr. Martin the ALJ correctly observed that

>The limitations from the psychiatrist were based largely on her hospitalization more than two and a half years earlier. There is no evidence that this psychiatrist has seen the claimant for follow-up since that time. One note said that he had seen her on January 30, 2007, but he did not dictate a note (Exhibit 9F). The diagnoses became a major depressive disorder, severe; a generalized anxiety disorder; and mixed personality disorder; and prescription medication dependence by history. The limitations identified were not consistent with records, which showed improvement with treatment and the psychiatrist's own global assessment of functioning of the claimant as 55, 60 within the past year

(TR. 20-21).

Accordingly, the ALJ properly concluded that the opinions of Dr. Martin should be given "little weight" because they were not well supported by his own treatment notes or by the medical evidence as a whole (TR. 20-21, 15, 19, 197-208, 406-417). The ALJ's decision provides specific, legitimate reasons for his rejection of Dr. Martin's opinions. *Watkins* at 1301.

Thus, it appears that the ALJ properly analyzed the opinions of Plaintiff's treating physician, Dr. Martin.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 6, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on January 17, 2012.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE